IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| SOUTHEASTERN BOLL WEEVIL ERADICATION FOUNDATION, | * * * | |
| Plaintiff, | * * | |
| VS. | * * | Civil Action No. 2:06-CV-00756 |
| BOLL WEEVIL ERADICATION FOUNDATION OF GEORGIA, INC.; TOMMY IRVIN in his capacity as TRUSTEE OF BOLL WEEVIL ERADICATION FOUNDATION OF GEORGIA, INC., | * * * * * * | |
| Defendants. | * | |

## MOTION AND NOTICE OF DEFENDANT BOLL WEEVIL ERADICATION FOUNDATION OF GEORGIA, INC. TO AMEND ANSWER

COMES NOW Boll Weevil Eradication Foundation of Georgia, Inc., a named Defendant in the above styled civil action, and, pursuant to Rule 15(a) of the Federal Rules of Civil Procedure, moves this Court to enter an Order granting Defendant leave to file its First Amended Answer in the above action, based upon the following grounds:

1.

More than twenty (20) days have elapsed since Defendant filed an answer to Plaintiff's Complaint, thus necessitating leave of the court for Defendant to amend its Answer.

2.

Defendant desires to file its First Amended Answer by adding to its Answer the following:

## EIGHTEENTH DEFENSE

**Some or all of Plaintiff's claims are barred because they are based on actions that were *ultra vires* to authority granted to Plaintiff by its charter, bylaws, resolutions, the 1997 Cooperative Agreement and the 2001 Amendment thereto, or any other governing documents.**

Pursuant to Local Rule 15.1, an original of Defendant's First Amended Answer, and one copy of the same is attached to this Motion.

3.

The theory contained in Defendant's First Amended Answer is necessary to enable Defendant to establish a defense to some or all of Plaintiff's claims, and therefore, the requested amendment will achieve the ends of justice.

4.

This motion to amend is not the result of undue delay, bad faith, or dilatory motive on the part of Defendant and timely conforms to the deadline established by this Court in its October 20, 2006 Scheduling Order.

5.

Since discovery remains open, Plaintiff will not be unduly prejudiced by Defendant filing this First Amended Answer as set forth above.

6.

Counsel for Defendant has advised Counsel for Plaintiff of Defendant's intent to file this First Amended Answer, and has, in advance, provided Counsel for Plaintiff with a copy of the proposed First Amended Answer adding the defense as set forth above.

Counsel for Plaintiff has advised that he has no objection to Defendant's filing its First Amended Answer.

Respectfully submitted,

This the 9th day of May, 2007.

/s/ Duke R. Groover
DUKE R. GROOVER
Georgia Bar No.: 313225


/s/ Stephen Louis A. Dillard
STEPHEN LOUIS A. DILLARD
Georgia Bar No.: 222172


/s/ G. Grant Greenwood
G. GRANT GREENWOOD
Georgia Bar No.: 309166


JAMES, BATES, POPE & SPIVEY, LLP
Post Office Box 4283
Macon, Georgia 31208-4283
Telephone: (478)742-4280
Facsimile: (478)742-8720

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| SOUTHEASTERN BOLL WEEVIL ERADICATION FOUNDATION, | * * * | |
| Plaintiff, | * * | |
| VS. | * * | Civil Action No. 2:06-CV-00756 |
| BOLL WEEVIL ERADICATION FOUNDATION OF GEORGIA, INC.; TOMMY IRVIN in his capacity as TRUSTEE OF BOLL WEEVIL ERADICATION FOUNDATION OF GEORGIA, INC., | * * * * * * | |
| Defendants. | * | |

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above and foregoing pleading on

counsel as follows by ECF or by placing same in the U.S. Mail, properly addressed and first-

class postage prepaid on this the 9th day of May, 2007.

D. Mitchell Henry, Esq.
T. Randall Lyons, Esq.
Webster, Henry, Lyons & White PC
Post Office Box 239
Montgomery, Alabama 36101-0239

Jerry A. Buchanan, Esq.
Benjamin A. Land, Esq.
Buchanan & Land, LLP
P. O. Box 2848
Columbus, Georgia 31902

Simeon F. Penton, Esq.
Kaufman & Rothfeder, P.C.
P. O. Drawer 4540
Montgomery, Alabama 36102

/s/ G. Grant Greenwood
G. GRANT GREENWOOD
Georgia Bar No.: 309166


JAMES, BATES, POPE & SPIVEY, LLP
Post Office Box 4283
Macon, Georgia 31208-4283
Telephone: (478)742-4280
Facsimile: (478)742-8720

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| SOUTHEASTERN BOLL WEEVIL ERADICATION FOUNDATION, | * * * | |
| Plaintiff, | * * | |
| VS. | * * | Civil Action No. 2:06-CV-00756 |
| BOLL WEEVIL ERADICATION FOUNDATION OF GEORGIA, INC.; TOMMY IRVIN in his capacity as TRUSTEE OF BOLL WEEVIL ERADICATION FOUNDATION OF GEORGIA, INC., | * * * * * * * | |
| Defendants. | * | |

FIRST AMENDED ANSWER AND COUNTERCLAIM OF BOLL WEEVIL
ERADICATION FOUNDATION OF GEORGIA, INC.

COMES NOW Boll Weevil Eradication Foundation of Georgia, Inc., a named

Defendant in the above styled civil action, and makes and files its First Amended Answer

and Counterclaim as follows:

ANSWER

This Defendant responds to the numbered paragraphs of Plaintiff's Complaint as

follows:

1.    This Defendant denies as pled the averments set forth in paragraph 1 of Plaintiff's

Complaint.  Answering further, this Defendant shows that Plaintiff Southeastern Boll

Weevil Eradication Foundation, Inc. is an Alabama corporation created and existing

under the Alabama Nonprofit Corporation Act (Ala. Code Title 10, Chapter 3A) with its

principal place of business in Montgomery, Montgomery County, Alabama.  Plaintiff is

made up of nine state foundation members, including this Defendant.  The other state

foundation members are Alabama, Mississippi, Tennessee, Florida, North Carolina, South Carolina, Missouri, and Virginia. Plaintiff's purpose is the elimination of the boll weevil, a type of beetle and a devastating pest to cotton farming, from the cotton fields of all the member states. Like this Defendant, the eight other state foundation members are nonprofit corporations registered in their respective states.

2.    This Defendant admits that it was a member of Plaintiff, but that it no longer has a membership relationship with Plaintiff.

3.    This Defendant denies the averments set forth in paragraph 3 of Plaintiff's Complaint.

4.    This Defendant is without knowledge or information sufficient to form a belief as to the residency and citizenship of Defendant Tommy Irvin. Answering further, this Defendant shows that its relationship with Defendant Tommy Irvin is defined and governed by O.C.G.A. Title 2, Chapter 7, Article 5 and Georgia Administrative Code Title 40, Subtitle 24.

5.    This Defendant denies the averments set forth in paragraph 5 of Plaintiff's Complaint.

6.    This Defendant admits the averments set forth in paragraph 6 of Plaintiff's Complaint.

7.    This Defendant admits the averments set forth in paragraph 7 of Plaintiff's Complaint.

8.    Responding to paragraph 8 of Plaintiff's Complaint, this Defendant admits that Plaintiff claims damages in excess of $75,000.00, but denies that it is liable to Plaintiff in any amount whatsoever.

9.      Responding to paragraph 9 of Plaintiff's Complaint, this Defendant adopts by reference and re-alleges its responses to paragraphs 1 through 8 of Plaintiff's Complaint as if set out fully herein.

10.     This Defendant denies as pled the averments set forth in paragraph 10 of Plaintiff's Complaint.    Answering further, this Defendant states that the agreement attached as Exhibit "A" to Plaintiff's Complaint speaks for itself.

11.     This Defendant denies as pled the averments set forth in paragraph 11 of Plaintiff's Complaint.

12.     This Defendant admits that paragraph 12 of Plaintiff's Complaint contains an accurate quote from the Agreement. Answering further, this Defendant denies that it has breached the Agreement or owes Plaintiff any sums.

13.     This Defendant denies the averments set forth in paragraph 13 of Plaintiff's Complaint.

14.     This Defendant denies the averments set forth in paragraph 14 of Plaintiff's Complaint.

15.     This Defendant denies the averments set forth in paragraph 15 of Plaintiff's Complaint.

15A.    Responding to the unnumbered paragraph following paragraph 15 of Plaintiff's Complaint, this Defendant denies that Plaintiff is entitled to recover any sums or other relief from this Defendant.

16.     Responding to paragraph 16 of Plaintiff's Complaint, this Defendant adopts by reference and re-alleges its responses to paragraphs 1 through 15 of Plaintiff's Complaint as if set out fully herein.

17.     This Defendant denies the averments set forth in paragraph 17 of Plaintiff's Complaint.

18.     This Defendant denies the averments set forth in paragraph 18 of Plaintiff's Complaint.

19.     This Defendant denies the averments set forth in paragraph 19 of Plaintiff's Complaint.

19A.    Responding to the unnumbered paragraph following paragraph 19 of Plaintiff's Complaint, this Defendant denies that Plaintiff is entitled to recover any sums or other relief from this Defendant.

20.     Responding to paragraph 20 of Plaintiff's Complaint, this Defendant adopts by reference and re-alleges its responses to paragraphs 1 through 19 of Plaintiff's Complaint as if set out fully herein.

21.     This Defendant denies the averments set forth in paragraph 21 of Plaintiff's Complaint.

22.     This Defendant denies the averments set forth in paragraph 22 of Plaintiff's Complaint.

23.     This Defendant denies the averments set forth in paragraph 23 of Plaintiff's Complaint.

23A.    Responding to the unnumbered paragraph following paragraph 23 of Plaintiff's Complaint, this Defendant denies that Plaintiff is entitled to recover any sums or other relief from this Defendant.

24.    Responding to paragraph 24 of Plaintiff's Complaint, this Defendant adopts by reference and re-alleges its responses to paragraphs 1 through 23 of Plaintiff's Complaint as if set out fully herein.

25.    This Defendant shows that its relationship with Defendant Tommy Irvin is defined and governed by O.C.G.A. Title 2, Chapter 7, Article 5 and Georgia Administrative Code Title 40, Subtitle 24, but denies as pled the balance of paragraph 25 of Plaintiff's Complaint.

26.    This Defendant denies the averments set forth in paragraph 26 of Plaintiff's Complaint.

27.    This Defendant denies the averments set forth in paragraph 27 of Plaintiff's Complaint.

28.    This Defendant denies the averments set forth in paragraph 28 of Plaintiff's Complaint.

28A.    Responding to the unnumbered paragraph following paragraph 28 of Plaintiff's Complaint, this Defendant denies that Plaintiff is entitled to recover any sums or other relief from this Defendant.

29.    Responding to paragraph 29 of Plaintiff's Complaint, this Defendant adopts by reference and re-alleges its responses to paragraphs 1 through 28 of Plaintiff's Complaint as if set out fully herein.

30.    This Defendant denies as pled the averments set forth in paragraph 30 of Plaintiff's Complaint. Answering further, this Defendant states that the agreement attached as Exhibit "A" to Plaintiff's Complaint speaks for itself, and this Defendant has not breached that agreement and does not owe Plaintiff any sums.

31.    This Defendant denies the averments set forth in paragraph 31 of Plaintiff's Complaint.

32.    This Defendant denies the averments set forth in paragraph 32 of Plaintiff's Complaint. Answering further, this Defendant shows that its relationship with Defendant Tommy Irvin is defined and governed by O.C.G.A. Title 2, Chapter 7, Article 5 and Georgia Administrative Code Title 40, Subtitle 24.

33.    This Defendant denies the averments set forth in paragraph 33 of Plaintiff's Complaint.

<u>Response to Plaintiff's prayers for relief:</u>  This Defendant denies that it is liable to Plaintiff in any manner whatsoever and denies that Plaintiff is entitled to any relief whatsoever.

<u>General Denials:</u>  This Defendant denies any averments set forth in Plaintiff's Complaint to which this Defendant has not specifically responded above.

FIRST DEFENSE

Plaintiff's Complaint fails to state a claim against this Defendant upon which relief can be granted.

SECOND DEFENSE

This Court lacks personal jurisdiction over this Defendant.

THIRD DEFENSE

Plaintiff's Complaint should be dismissed for insufficiency of process.

FOURTH DEFENSE

Plaintiff's Complaint should be dismissed for insufficiency of service of process.

## FIFTH DEFENSE

Venue is not proper in this Court.

## SIXTH DEFENSE

Some or all of Plaintiff's claims are barred by accord and satisfaction.

## SEVENTH DEFENSE

Some or all of Plaintiff's claims are barred by estoppel.

## EIGHTH DEFENSE

Some or all of Plaintiff's claims are barred by failure of consideration.

## NINTH DEFENSE

Some or all of Plaintiff's claims are barred by fraud.

## TENTH DEFENSE

Some or all of Plaintiff's claims are barred by illegality.

## ELEVENTH DEFENSE

Some or all of Plaintiff's claims are barred by payment.

## TWELFTH DEFENSE

Some or all of Plaintiff's claims are barred by waiver.

## THIRTEENTH DEFENSE

This Defendant has not breached any contract or agreement with Plaintiff.

## FOURTEENTH DEFENSE

This Defendant has not been unjustly enriched by any action on the part of Plaintiff.

## FIFTEENTH DEFENSE

This Defendant is not indebted to Plaintiff in any amount whatsoever.

<u>SIXTEENTH DEFENSE</u>

This Defendant has not breached a fiduciary duty owed to Plaintiff.

<u>SEVENTEENTH DEFENSE</u>

Plaintiff is not entitled to any declaratory or injunctive relief against this Defendant.

<u>EIGHTEENTH DEFENSE</u>

Some or all of Plaintiff's claims are barred because they are based on actions that were *ultra vires* to authority granted to Plaintiff by its charter, bylaws, resolutions, the 1997 Cooperative Agreement and the 2001 Amendment thereto, or any other governing documents.

<u>COUNTERCLAIM</u>

Defendant Boll Weevil Eradication Foundation of Georgia, Inc. (hereinafter "the Georgia Foundation") makes its Counterclaim against Plaintiff Southeastern Boll Weevil Eradication Foundation, Inc. (hereinafter "the Southeastern Foundation") as follows:

**PARTIES**

1.    The Georgia Foundation is a Georgia corporation created and existing under the Georgia Nonprofit Corporation Code (O.C.G.A. Title 14, Chapter 3) with its principal place of business in Quitman, Brooks County, Georgia.

2.    The Georgia Foundation's purpose is the elimination of the boll weevil, a type of beetle and a devastating pest to cotton farming, from the cotton fields of Georgia.

3.    The Southeastern Foundation is an Alabama corporation created and existing under the Alabama Nonprofit Corporation Act (Ala. Code Title 10, Chapter 3A) with its principal place of business in Montgomery, Montgomery County, Alabama.

4.      The Southeastern Foundation is registered with the Georgia Secretary of State as a
foreign nonprofit corporation with it registered agent for service being Corporation
Process Company, 180 Cherokee Street, NE, Marietta, Cobb County, Georgia 30060.

5.      The Southeastern Foundation is made up of nine state foundation members,
including the Georgia Foundation. The other state foundation members are Alabama,
Mississippi, Tennessee, Florida, North Carolina, South Carolina, Missouri, and Virginia.

6.      Like the Georgia Foundation, the eight other state foundation members are
nonprofit corporations registered in their respective states.

## JURISDICTION

7.      The Georgia Foundation is a citizen of the State of Georgia in that it is a nonprofit
corporation incorporated under the laws of the State of Georgia, having its principal place
of business in Quitman, Brooks County, Georgia. The Southeastern Foundation is a
citizen of Alabama in that it is a nonprofit corporation incorporated under the laws of the
State of Alabama, having its principal place of business in the State of Alabama. The
matter in controversy in this cause exceeds the sum of $75,000.00, exclusive of interest
and costs. Accordingly, subject matter jurisdiction is proper in this Court based upon
diversity jurisdiction. 28 U.S.C. § 1332.

8.      The Southeastern Foundation has submitted itself to the jurisdiction of this Court
by filing its Complaint against the Georgia Foundation.

## ASSESSMENTS

9.      In 1997, the various state foundations, including the Georgia Foundation, entered
into an Agreement with the Southeastern Foundation. A copy of the Agreement is
attached to the Southeastern Foundation's Complaint as Exhibit "A".

10.     Section II of the Agreement provides for how the state foundations are to send

funds to the Southeastern Foundation. That section provides:

II.

(A) The State Foundations agree that such projected funds necessary to
carry out Program requirements within each state shall be assessed by
each State Foundation on an annual basis after consultation with the
Southeastern Foundation and that such funds shall be promptly remitted to
the Southeastern Foundation.
(B) Should an individual State Foundation fail to collect 100% of any
year's projected funds, such shortfall shall be added to the following
year's projected funds and promptly remitted to the Southeastern
Foundation upon collection.
(C) Should actual cost exceed state assessment levels, such effected State
Foundation will exert every effort in good faith to increase the state
assessment levels sufficient to cover actual cost.
(D) Funds so remitted shall become the property of the Southeastern
Foundation, and the State Foundations shall not be liable for any acts,
actions or omissions by the Southeastern Foundation, or for the use of said
funds, or the operation of the Southeastern Boll Weevil Eradication
Foundation, Inc.
(E) All parties hereto agree that buffer zone costs shall be a joint expense
of the parties of the First Part.

11.     Per the above quoted portion of the Agreement, each state foundation agreed to

set and collect assessments from its growers to cover the cost of eradication program

requirements in each respective state.

12.     The Southeastern Foundation does not have authority to set a state foundation's

yearly assessment and does not have authority to assess state foundations.

13.     The Southeastern Foundation does not have authority to compel one state

foundation to subsidize another state foundation. Each state foundation must assess its

state's growers in an amount sufficient to pay for the program in its state.

14.     The Georgia Foundation assesses every cotton grower in Georgia on a per acre

basis pursuant to O.C.G.A. §§ 2-7-156 and 2-7-156.1.

15.    The money raised by the assessment is remitted to the Southeastern Foundation by the Georgia Commissioner of Agriculture.

16.    The result of the foregoing is that every cotton grower in Georgia must pay, by law, an assessment which ultimately ends up in the hands of the Southeastern Foundation.

**BUFFER ZONE COSTS**

17.    As used in Section II(E) of the Agreement, the term "buffer zone" means the leading edge of an eradicated area that is subject to infestation by migrating boll weevils from a non-program area. As provided in Section II(E), buffer zone costs are to be a "joint expense" of the state foundations.

18.    Although the buffer zone costs for the Southeastern Foundation are required to be a "joint expense" (not a pro rata expense) of the state foundations, the Georgia Foundation has paid much more for buffer zone costs than every other state foundation.

19.    The Southeastern Foundation has assessed buffer zone costs on a per acre basis, and, thus, treated these costs as a pro rata expense rather than as a "joint expense" as provided for in the Agreement. Georgia has more acres of cotton than any other member state and has, therefore, paid far more than its share of what is supposed to be a joint expense.

20.    Further, since 2001, the Southeastern Foundation has repeatedly, and in breach of the Agreement, exempted several state foundations from paying buffer zone costs.

21.    As stated above, Georgia has the most acreage of cotton and, therefore, pays more than any other state. The Georgia Foundation has never been exempted from paying buffer zone costs.

22.    As of 2002, there were only three areas in the United States without boll weevil eradication programs. Only one of those areas, Northeast Arkansas, bordered the geographic area of the Southeastern Foundation. Thus, the only buffer zone in the Southeastern Foundation geographic area was in Tennessee and Missouri at their borders with Arkansas, a non-member state.

23.    At a Southeastern Foundation Board of Directors Meeting on November 20, 2002, the Southeastern Foundation proposed and approved a plan whereby the Southeastern Foundation would fund an eradication program in Northeast Arkansas for 2003 and 2004 in lieu of having a buffer zone.

24.    The Southeastern Foundation represented and promised that this cost was to be assessed at $.50 per acre on every grower in each member state for two years. After the two years, buffer zone costs paid by the member states were to cease.

25.    The Georgia Foundation agreed to the funding of the Northeast Arkansas Eradication program based upon the representation that the buffer zone costs would end after 2004.

26.    In spite of the foregoing, the Southeastern Foundation continued to impermissibly assess buffer zone costs to the Georgia Foundation after 2004.

## THE MISSISSIPPI FOUNDATION

27.    The Mississippi Foundation joined the Southeastern Foundation in 1994. Since that time, Mississippi has maintained a substandard eradication program both in its methods of eradication and its refusal to properly assess its growers.

28.    By 1999, the Mississippi Foundation had assessment deficits in the millions of dollars. The effect was that the Georgia Foundation and other state foundations were

remitting money to the Southeastern Foundation, which was, in turn, impermissibly and in violation of the Agreement, subsidizing Mississippi's eradication program.

29.    Rather than mandate an increase in Mississippi's assessment levels as required by the Agreement, the Southeastern Foundation secured a Farm Service Agency loan in 2000 in the amount of $12,000,000.00 in order to fund the Mississippi Foundation's program. This was done over the objection of the Georgia Foundation.

30.    In order to make the loan payments, the Southeastern Foundation impermissibly raised the buffer zone assessments in 2001. Additionally, the Southeastern Foundation exempted Mississippi and Tennessee from paying these assessments in 2001. As a result, Georgia growers and the Georgia Foundation were required to subsidize other state foundations.

31.    The Southeastern Foundation has paid substantial amounts toward the FSA loan for Mississippi using funds collected from the Georgia Foundation and other state foundations. This is contrary to Section V(d) of the 1997 Agreement which states in relevant part: "No State Foundation shall be liable for any debt or other obligation incurred by the Southeastern Foundation."

32.    The Southeastern Foundation continues to use the money paid by Georgia growers to subsidize the eradication programs of other states, including payments made towards the FSA loan for Mississippi.

33.    There is nothing in the 1997 Agreement which authorizes the Southeastern Foundation to require the Georgia Foundation to pay for debts incurred on behalf of another state foundation. In fact, the Agreement expressly provides that each state foundation shall be responsible for the cost of the program in its state.

## THE GEORGIA FOUNDATION'S WITHDRAWAL FROM THE
## SOUTHEASTERN FOUNDATION

34.    Based upon the actions of the Southeastern Foundation described herein, the Southeastern Foundation has breached the Agreement.

35.    The Georgia Foundation has notified the Southeastern Foundation that it considers the Agreement rescinded due to the Southeastern Foundation's actions.

36.    The Southeastern Foundation objects to the withdrawal of the Georgia Foundation.

37.    The Georgia Foundation pays much more money into the Southeastern Foundation than any other state foundation (approximately half of all money paid to Southeastern comes from the Georgia Foundation). However, the Georgia Foundation has the same number of votes in the Southeastern Foundation as every other state foundation. As a result of the Southeastern Foundation's actions, the Georgia Foundation and it growers have been forced to subsidize the other state foundations in contravention of the parties' Agreement.

38.    The Southeastern Foundation's objection to the Georgia Foundation's withdrawal is in spite of the fact that the Southeastern Foundation has repeatedly breached the 1997 Agreement and repeatedly violated its fiduciary duty to the Georgia Foundation.

### COUNT I - BREACH OF CONTRACT

39.    The Georgia Foundation adopts by reference and re-alleges paragraphs 1 through 38 of its Counterclaim as if fully set out herein.

40.    In 1997, the Georgia Foundation and the Southeastern Foundation entered into a valid contract. A true and correct copy of the same is attached to the Southeastern Foundation's Complaint as Exhibit "A" and referenced herein as the Agreement.

41.    The Georgia Foundation has performed its obligations under the Agreement.

42.    The Southeastern Foundation has repeatedly breached the Agreement by, among other things:

> (a)    assessing the Georgia Foundation to pay for the costs of boll weevil eradication programs in other states;
>
> (b)    assessing the Georgia Foundation to pay debt incurred on behalf of the Mississippi Foundation;
>
> (c)    failing to require that the other state foundations assess their growers in amounts sufficient to cover the cost of eradication programs in those respective states and, instead, assessing the Georgia Foundation to subsidize the other state foundations;
>
> (d)    assessing the Georgia Foundation for buffer zone costs in a higher amount than every other state foundation rather than treating buffer zone costs as a "joint expense";
>
> (e)    exempting some state foundations from paying any buffer zone costs rather than treating buffer zone costs as a "joint expense";
>
> (f)    assessing the Georgia Foundation for buffer zone costs in 2005 and 2006; and,
>
> (g)    using money remitted by the Georgia Foundation for buffer zone costs and using the money for purposes other than buffer zone costs.

43.    As a result of the foregoing conduct, the Georgia Foundation has been damaged in an amount to be proven at trial. Specifically, the Georgia Foundation has been damaged in amounts: 1) remitted to the Southeastern Foundation by the Georgia Foundation which

were used to subsidize other state foundations; 2) remitted to the Southeastern

Foundation for buffer zone costs which were used for purposes other than buffer zone

costs; and 3) remitted to the Southeastern Foundation over and above its equal share of

the buffer zone costs.

## COUNT II - BREACH OF FIDUCIARY DUTY

44.    The Georgia Foundation adopts by reference and re-alleges paragraphs 1 through

43 of its Counterclaim as if fully set out herein.

45.    Based upon the facts set forth herein, a fiduciary relationship existed between the

Southeastern Foundation and the Georgia Foundation.

46.    Specifically, the Southeastern Foundation had a fiduciary duty to the Georgia

Foundation to ensure that all its member foundations complied with their obligations

under the Agreement.

47.    The Southeastern Foundation also had a fiduciary duty to the Georgia Foundation

to only use money remitted by the Georgia Foundation for purposes authorized under the

Agreement or otherwise approved by the Georgia Foundation.

48.    Based upon the facts set forth herein, the Southeastern Foundation violated its

fiduciary duty to the Georgia Foundation by misspending money remitted by the Georgia

Foundation to the Southeastern Foundation.

49.    Based upon the facts set forth herein, the Southeastern Foundation violated its

fiduciary duty to the Georgia Foundation by misrepresenting to the Georgia Foundation

how the Georgia Foundation's money was being spent.

50. Based upon the facts set forth herein, the Southeastern Foundation violated its fiduciary duty to the Georgia Foundation by failing to require that all its members fulfill their obligations under the Agreement.

51. As a result of the Southeastern Foundation's violations of its fiduciary duty to the Georgia Foundation, the Georgia Foundation has been damaged in an amount to be proven at trial. Specifically, the Georgia Foundation has been damaged in the amount of money paid by the Georgia Foundation to the Southeastern Foundation which was either assessed or spent for any purpose other than what was authorized by the Agreement or otherwise approved by the Georgia Foundation. The Georgia Foundation is also entitled to general damages to be proven at trial.

## COUNT III - PROMISSORY ESTOPPEL

52. The Georgia Foundation adopts by reference and re-alleges paragraphs 1 through 51 of its Counterclaim as if fully set out herein.

53. In 2002, the Southeastern Foundation promised that, if the Georgia Foundation would agree to fund the Northeast Arkansas boll weevil eradication program in 2003 and 2004, then assessments for buffer zone costs would end beginning in 2005.

54. The Georgia Foundation reasonably relied upon this misrepresentation to its detriment by paying $ .50 per acre of cotton in the state of Georgia for 2003 and 2004 to fund the Northeast Arkansas boll weevil eradication program. The Georgia Foundation was under no obligation to pay for the Northeast Arkansas eradication program and only did so based upon the Southeastern Foundation's promise.

55. Contrary to its promise to end buffer zone costs after 2004 in exchange for the funding of the Northeast Arkansas eradication program by the Georgia Foundation in

2003 and 2004, the Southeastern Foundation continued to assess buffer zone costs against the Georgia Foundation after 2004.

56.    As a result, the Georgia Foundation has been damaged in an amount to be proven at trial. Specifically, the Georgia Foundation has been damaged in the amount of $.50 per acre of cotton grown in the state of Georgia in 2003 and 2004.

## COUNT IV - CONVERSION

57.    The Georgia Foundation adopts by reference and re-alleges paragraphs 1 through 56 of its Counterclaim as if fully set out herein.

58.    The Southeastern Foundation did not have the authority to use the money remitted to it by the Georgia Foundation for any purpose not authorized by the Agreement or otherwise approved by the Georgia Foundation.

59.    The actions of the Southeastern Foundation in using the Georgia Foundation's money for purposes not authorized by the Agreement or approved by the Georgia Foundation constitutes conversion of the Georgia Foundation's property.

## COUNT V - EQUITABLE ACCOUNTING

60.    The Georgia Foundation adopts by reference and re-alleges paragraphs 1 through 59 of its Counterclaim as if fully set out herein.

61.    As set forth herein, a fiduciary relationship exists between the Georgia Foundation and the Southeastern Foundation. Accordingly, the Southeastern Foundation owes a duty to the Georgia Foundation to account for all money remitted by the Georgia Foundation to the Southeastern Foundation.

62.    The Southeastern Foundation has engaged in a pattern of conduct such that it owes a duty to the Georgia Foundation to provide an accounting of all spending by the Southeastern Foundation since 1997.

63.    This conduct includes, but is not limited to, misappropriating money, misspending money, and using money remitted to it by the Georgia Foundation to subsidize other state foundations.

64.    Further, pursuant to the Agreement, Southeastern collects assessment money from the state foundations and holds that money in trust for the benefit of each respective state foundation. The money may only be used by the Southeastern Foundation in a manner and for a purpose authorized under the Agreement. Accordingly, the Southeastern Foundation owes a duty to the Georgia Foundation to provide an accounting of all money collected and spent by the Southeastern Foundation since 1997.

65.    Therefore, the Georgia Foundation seeks an order of this Court compelling the Southeastern Foundation to provide an accounting of all money collected and spent by the Southeastern Foundation since 1997 and requiring the repayment of all misspent funds to the Georgia Foundation.

## COUNT VI - DECLARATORY JUDGMENT

66.    The Georgia Foundation adopts by reference and re-alleges paragraphs 1 through 65 of its Counterclaim as if fully set out herein.

67.    Based upon the conduct of the Southeastern Foundation as set forth herein, the Georgia Foundation takes the position that it is entitled to rescind the 1997 Agreement and withdraw from the Southeastern Foundation.

68.    Further, the Georgia Foundation takes the position that the termination provision in the 1997 Agreement is invalid to the extent that it is interpreted to force the Georgia Foundation to remain a member of the Southeastern Foundation against its will.

69.    Further, the Georgia Foundation takes the position that the Southeastern Foundation cannot continue to assess the Georgia Foundation under the 1997 Agreement.

70.    Without resolution of the issues set forth above, the Georgia Foundation is in a position of uncertainty and does not know what amounts, if any, should be assessed to the cotton growers of Georgia.

71.    Therefore, the Georgia Foundation requests that this Court declare that the Georgia Foundation may rescind the Agreement and withdraw from its membership in the Southeastern Foundation.

WHEREFORE, the Georgia Foundation prays:

(a)    that Plaintiff's Complaint be dismissed;

(b)    that it have a trial by jury;

(c)    that it be awarded compensatory damages in an amount to be proven at trial;

(d)    that it be awarded it attorney's fees and expenses of litigation;

(e)    that the Southeastern Foundation be ordered to provide an accounting of all money collected and spent by the Southeastern Foundation since 1997 and repay all misspent funds to the Georgia Foundation;

(f)    that this Court issue a declaration that the Georgia Foundation may rescind the 1997 Agreement without any further obligation thereunder;

(g)     that this Court issue a declaration that the the termination provision in the

1997 Agreement is invalid to the extent that it is interpreted to force the

Georgia Foundation to remain a member of the Southeastern Foundation;

(h)     that this Court issue a declaration that the Southeastern Foundation cannot

continue to assess the Georgia Foundation under the 1997 Agreement; and

(i)     that it have such other and further relief as may be deemed just and

appropriate.


This 9th day of May, 2007.



/s/ Duke R. Groover
DUKE R. GROOVER
Georgia Bar No.: 313225


/s/ Stephen Louis A. Dillard
STEPHEN LOUIS A. DILLARD
Georgia Bar No.: 222172


/s/ G. Grant Greenwood
G. GRANT GREENWOOD
Georgia Bar No.: 309166



JAMES, BATES, POPE & SPIVEY, LLP
Post Office Box 4283
Macon, Georgia 31208-4283
Telephone: (478)742-4280
Facsimile: (478)742-8720

/s/ Jerry A. Buchanan
JERRY A. BUCHANAN
Alabama Bar No.: BUC012


/s/ Benjamin A. Land
BENJAMIN A. LAND
Alabama Bar No.: LAN054

BUCHANAN & LAND, LLP
Post Office Box 2848
Columbus, Georgia 31902
Telephone: (706)323-2848
Facsimile: (706)323-4242


/s/ Simeon F. Penton
SIMEON FRANKLIN PENTON
Alabama Bar No.: PEN007

KAUFMAN & ROTHFELDER, P.C.
Post Office Drawer 4540
Montgomery, Alabama 36102
Telephone: (334)244-1111
Facsimile: (334)244-1969

Attorneys for Boll Weevil Eradication
Foundation of Georgia, Inc.